Docket No. 19-CV-1528 (ALC) (RWL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILANA MURPHY,

                                            Plaintiff,

-against-

INSTITUTE OF INTERNATIONAL EDUCATION,

                                            Defendant.

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S
MOTION TO ENFORCE THE SETTLEMENT
AGREEMENT**

**COLLAZO & KEIL, LLP**
*Attorneys for Defendant*

John P. Keil
Daniel J. LaRose
747 Third Avenue, 25th Floor
New York, New York 10017

## TABLE OF CONTENTS

                                                                                                                            **Page**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS ...................................................................................................................................... 2

ARGUMENT ............................................................................................................................ 5

      I.      LEGAL STANDARD ................................................................................................ 5

      II.     THE SETTLEMENT AGREEMENT IS ENFORCEABLE ................................... 5

            A.     The Mediation Agreement is Binding and Enforceable ............................. 6

                   (i)       There was No Express Reservation of the Right Not to be Bound ............................................................................................... 7

                   (ii)      There Has Been Partial Performance of the Agreement ................ 8

                   (iii)     All Material Terms were Agreed to ................................................ 9

                          1.      Even if the Settlement Agreement did not explicitly state a Material Term, the Court may Infer it .................... 9

                          2.      The Mediation Agreement Does Not Omit Material Terms ........................................................................................ 10

                   (iv)     The Agreement is the Type Usually Committed to Writing ........ 11

            B.     The Settlement Agreement Did Not Provide a Revocation Period .......... 12

            C.     Plaintiff Did Not Enter into the Settlement Agreement Under Duress ........................................................................................................ 12

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Adjustrite Systems, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543 (2d Cir. 1998) ............. 5, 6

*Aguiar v. New York*, No. 06-CV-03334, 2008 U.S. Dist. LEXIS 73631 (S.D.N.Y. Sept. 25, 2008) ........................................................................................................................ 9

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329 (S.D.N.Y. 2006) ............................................................................................................................ 4

*Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005) ................................................................................. 6

*Bus. Incentives Co. v. Sony Corp. of Am.*, 397 F. Supp. 63 (S.D.N.Y. 1975) ............................. 12

*Ciaramella v. Reader's Digest Association, Inc.*, 131 F.3d 320 (2d Cir. 1997) .......................... 10

*Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170 (E.D.N.Y. 2006) .................................... 6, 7

*Dimario v. Coppola*, 10 F. Supp. 2d 213 (E.D.N.Y. 1998) ........................................................... 8

*E.E.O.C. v. Am. Express Publ'g Corp.*, 681 F. Supp. 216 (S.D.N.Y. 1988) ............................... 12

*Elliott v. City of New York*,  No. 11-CV-7291, 2012 U.S. Dist. LEXIS 126133 (S.D.N.Y. Sept. 5, 2012) ........................................................................................................................ 11

*Evans v. Waldorf-Astoria Corp.*, 33 F.3d 49 (2d Cir. 1994) ........................................................ 12

*Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911 (E.D.N.Y. 1993) ......................................... 12

*Francis v. HBO, Inc.*, No. 04-CV-7430, 2005 U.S. Dist. LEXIS 7723 (S.D.N.Y. Apr. 28, 2005) ...................................................................................................................... 11

## TABLE OF AUTHORITIES
(continued)

**Page**

*Granger v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 13-CV-3569, 2014
U.S. Dist. LEXIS 113780 (S.D.N.Y. Aug. 15, 2014) ........................................................ 11, 12

*Haines v. City of N.Y.*, 41 N.Y.2d 769 (1977) ................................................................................ 9

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136 (2d Cir. 2011) ........................ 11

*Jian Wang v. International Business Machines Corp.*, No. 11-CV-2992, 2014 U.S. Dist.
LEXIS 165515 (S.D.N.Y. Oct. 7, 2014) ................................................................................ 6, 7

*Khalian v. Skintej*, No. 15-CV-1318, 2016 U.S. Dist. LEXIS 195296 (S.D.N.Y. 2016) .............. 4

*Lauter v. W & J Sloane, Inc.*, 417 F. Supp. 252 (S.D.N.Y. 1976) ................................................. 9

*Lewis v. New York City Transit Auth.*, No. 04-CV-2331, 2015 U.S. Dist. LEXIS 84086
(E.D.N.Y. June 24, 2015) ........................................................................................................ 5

*Little v. Greyhound Lines, Inc.*, No. 04-CV-6735, 2005 U.S. Dist. LEXIS 22247
(S.D.N.Y. Sept. 30, 2015) ........................................................................................................ 5

*Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119 (S.D.N.Y. 2012) ........................................ 12

*McLeod v. Post Graduate Ctr. for Mental Health*, No. 14-CV-10041, 2016 U.S. Dist.
LEXIS 144855 (S.D.N.Y. Oct. 19, 2016) ............................................................................ 5, 7

*McNamara v. Tourneau, Inc.*, 464 F. Supp. 2d 232 (S.D.N.Y. 2006) .......................................... 6

*Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714 (2d Cir. 1974) ................................ 4

*Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007) ....................................................................... 4

## TABLE OF AUTHORITIES
(continued)

**Page**

*Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98-CV-1544, 2000 U.S. Dist. LEXIS 14907 (S.D.N.Y. 2000) .................................................................................................................. 10

*Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332 (S.D.N.Y. 2010) ................... 6

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ....................................................... 4

*SEC v. Rorech*, 720 F. Supp. 2d 367 (S.D.N.Y. 2010) ................................................................... 8

*Silas v. City of N.Y.*, 536 F. Supp. 2d 353 (S.D.N.Y. 2008) ........................................................... 4

*Tractebel Energy Mktg. v AEP Power Mktg.*, 487 F.3d 89 (2d Cir. 2007) .................................... 8

*Trolman v. Trolman, Glaser & Lichtman, P.C.*, 114 A.D.3d 617 (1st Dep't 2014) ...................... 5

*United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446 (S.D.N.Y 2018) ......................... 4

**S<small>TATUTES</small>**

29 U.S.C. § 626(f)(1)(G) ............................................................................................................... 11

## **PRELIMINARY STATEMENT**

In her Complaint, Plaintiff Philana Murphy alleges that Defendant Institute of International Education failed to promote Plaintiff, created a hostile work environment, and provided different terms and conditions of employment to Plaintiff based on Plaintiff's race, all in violation of Title VII and §1981, as well as the New York State and City Human Rights Laws.

The case was referred to the Southern District's mandatory mediation program for employment cases. Plaintiff was assigned *pro bono* counsel for purposes of the mediation. During the mediation session, Plaintiff and Defendant agreed to a settlement, which was memorialized on the District's provided mediation agreement form. The following week, Plaintiff decided she no longer wanted to abide by the settlement agreement and wrote an e-mail to the Court asking for the case to be re-opened. The Court held a conference and provided Plaintiff time to hire private counsel, which she has done.

Defendant now moves to enforce the settlement agreement. The parties entered into a binding settlement agreement at mediation. There is a document dated August 16, 2019 and signed by Plaintiff, Plaintiff's *pro bono* counsel, Defendant, Defendant's counsel, and the mediator, wherein Plaintiff releases her claims, provides a general release, and resigns her employment in exchange for one year's-worth of salary, two months of COBRA premium payments, and regular pay and benefits until August 23, 2019. An agreement at a mediation session is enforceable and not merely an "agreement to agree." The agreement did not provide any provisions allowing revocation for any reason. The agreement contains all material terms, and Plaintiff was not under duress when signing the agreement.

For these reasons, explained more fully below, the settlement agreement should be upheld and Plaintiff's claims should be dismissed with prejudice.

## FACTS

Plaintiff *pro se* filed the Complaint on February 15, 2019 (Dkt. #2), alleging race discrimination in violation of Title VII and §1981, as well as the New York State and City Human Rights Laws. *See generally*, Compl. Via a March 1, 2019 Order, the Court referred the case to mediation and ordered the Clerk of Court to locate *pro bono* counsel to represent Plaintiff at the mediation. (Dkt. #7). Susanne Toes Keane of the New York Legal Assistance Group entered a Notice of Limited Appearance on behalf of the Plaintiff on April 18, 2019. (Dkt. #10).

On August 16, 2019, a mediation session was held. (Dkt. #19). During the mediation session, the parties reached an agreement on all material terms. (Ex. 1;[1] Dkt. #19). The parties agreed that, in exchange for a discontinuance with prejudice, a general release for all claims, and separation of employment, Defendant would pay Plaintiff one year's worth of salary, provide two-months' worth of COBRA premium payments, and pay Plaintiff her regular pay and benefits until August 23, 2019. (Ex. 1). The parties memorialized this agreement via the Mediation Agreement form provided by the Southern District's mediation office. (*Id*.) The document was signed by Plaintiff, Plaintiff's *pro bono* counsel, Defendant, Defendant's counsel, and the mediator. (*Id*.) The agreement provided no terms that allowed either party to revoke the agreement. (*Id*.) Notably, the Older Workers Benefit Protection Act is not applicable to this agreement.

Plaintiff's *pro bono* counsel and Defendant's counsel agreed to a fleshed out agreement, which Plaintiff's *pro bono* counsel indicated would be signed by Plaintiff at her office on August 22, 2019. (LaRose Decl. ¶ 4). Plaintiff, after agreeing to the settlement at the mediation session, changed her mind and wrote an e-mail to the Court on August 22, 2019 requesting to "proceed

---

[1] References to all exhibits are to those annexed to the Declaration of Daniel J. LaRose ("LaRose Decl."), or the Declaration of Tim Wirch ("Wirch Decl."), each dated November 18, 2019.

with [her] case." (Ex. 3).  The Court ordered a conference, which was held on September 3, 2019. (Dkt. #21).  Despite the representation in her e-mail that she had retained counsel, Plaintiff continued to appear *pro se*. (*Id.*; LaRose Decl. ¶ 6).  Judge Carter gave Plaintiff forty-five days to find and secure counsel. (Dkt. #22).

On September 12, 2019, Defendant's counsel was contacted by Kelly O'Connell of the Derek Smith Law Group, who informed Defendant's counsel that she had been retained by Plaintiff.  (LaRose Decl. ¶ 7).  After discussing the proposed contents of the joint status report with Ms. O'Connell, Defendant's counsel sent a draft to Ms. O'Connell for approval on September 13, 2019. (*Id.*)  Defendant's counsel attempted to contact Ms. O'Connell several times via phone call and e-mail from September 13, 2019 to September 26, 2019. (*Id.*)  Ms. O'Connell ignored all e-mails and voicemails until September 27, 2019 when she informed Defendant's counsel she was no longer representing Plaintiff. (*Id.*)  Hours later, Plaintiff's current counsel contacted Defendant's counsel to inform him that Law Offices of G. Oliver Koppell & Associates would be representing Plaintiff. (*Id.*)

On August 30, 2019, the next pay period following the mediation session, IIE paid Plaintiff for all hours worked. (Wirch Decl. ¶ 7).  In the same check, IIE also paid Plaintiff her normal salary for the one-week period of August 16, 2019 until August 23, 2019 per the Mediation Agreement, even though Plaintiff did not work during that week. (*Id.*)  Additionally, because August 30, 2019 was the first pay date after Plaintiff's separation from employment, IIE, in accordance with New York Labor Law, also paid Plaintiff for all accrued but unused paid time off ("PTO") on that date. (*Id.*)  On September 17, 2019, Plaintiff contacted Infinisource, the company Defendant uses to administer COBRA benefits to former employees, and informed the Infinisource representative that Defendant would be paying for Plaintiff's COBRA premiums.

3

(*Id*. at ¶ 8)  Defendant's counsel attempted to contact Plaintiff's counsel regarding this request, but Ms. O'Connell did not respond to e-mails or phone calls. (LaRose Decl. ¶ 8).  After finally speaking to Plaintiff's current counsel on September 27, 2019, Defendant confirmed Plaintiff made this request. (*Id*.; Wirch Decl. ¶ 9)  Defendant authorized the payment for two-months' worth of premium contributions per the settlement agreement, and the payments were finalized on October 2, 2019. (Wirch Decl. ¶ 9).

Since August 16, 2019, Plaintiff has not attempted to return to work. (Wirch Decl. ¶ 6).

**ARGUMENT**

I. **LEGAL STANDARD**

This Court has the power to summarily enforce a settlement agreement reached in a case before it upon a party's motion. *See United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y 2018) (*citing Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)). The party seeking to enforce a purported settlement agreement has the burden to demonstrate the agreement's validity. *See Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006). Settlement agreements are interpreted according to the general principles of contract law. *Id.*; *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).

The Second Circuit and various district courts "regularly apply New York law in analyzing whether a settlement agreement should be enforced," and therefore New York law should apply here. *Prevezon Holdings*, 289 F. Supp. 3d at 451 (*quoting Silas v. City of N.Y.*, 536 F. Supp. 2d 353, 357 (S.D.N.Y. 2008)). Under New York law, a valid contract requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).

II. **THE SETTLEMENT AGREEMENT IS ENFORCEABLE**

Courts in this Circuit have long held that agreements made during court-ordered mediation are enforceable even if the parties intended to subsequently formalize the agreement. *See Khalian v. Skintej*, No. 15-CV-1318, 2016 U.S. Dist. LEXIS 195296, at *5 (S.D.N.Y. 2016) (memorandum drafted at mediation upheld as enforceable settlement agreement after it was signed by *pro se* plaintiff using mediation counsel despite plaintiff later refusing to sign "more formal" agreement); *Little v. Greyhound Lines, Inc.*, No. 04-CV-6735, 2005 U.S. Dist. LEXIS 22247, at *5-6 (S.D.N.Y. Sept. 30, 2015) (*pro se* plaintiff with assigned counsel was bound by

5

hand-written agreement composed during mediation session despite plaintiff's refusal to sign formal settlement agreement); *Lewis v. New York City Transit Auth.*, No. 04-CV-2331, 2015 U.S. Dist. LEXIS 84086, at *9 (E.D.N.Y. June 24, 2015) (enforcing a settlement agreement signed at mediation "even though it contemplated a further and more formal memorialization of the terms"); *Trolman v. Trolman, Glaser & Lichtman, P.C.*, 114 A.D.3d 617, 618 (1st Dep't 2014) ("the handwritten memorandum executed following mediation between the parties was a binding and enforceable settlement agreement, and not merely an agreement to agree").

In fact, this Court decided an extremely similar case in *McLeod v. Post Graduate Ctr. for Mental Health*, No. 14-CV-10041 (ALC)(JCF), 2016 U.S. Dist. LEXIS 144855 (S.D.N.Y. Oct. 19, 2016). In *McLeod*, the plaintiff brought an employment discrimination suit *pro se*, and was assigned *pro bono* counsel for the limited purpose of representing her during the mediation. *See McLeod v. Post Graduate Ctr. for Mental Health*, No. 14-CV-10041, 2016 U.S. Dist. LEXIS 137829 (S.D.N.Y. Sep. 30, 2016) (Report & Recommendation recommending the motion to enforce be granted). After several hours of negotiation, the parties signed a memorandum of understanding, agreeing that the plaintiff would dismiss the action in exchange for a sum certain. *Id*. at *2. They further agreed that the plaintiff would execute a full release of all claims. *Id*. Days later, the plaintiff decided she was not happy with the agreement. *Id*. at *2-3. The defendants filed a motion to enforce the settlement agreement. *Id*. at *3. Judge Francis submitted a Report & Recommendation (R&R) that recommended the motion be granted because the memorandum of understanding was binding. *Id*. at *7. Your Honor adopted the R&R and granted the defendants' motion. *McLeod*, 2016 U.S. Dist. LEXIS 144855, at *2.

### A. The Mediation Agreement is Binding and Enforceable

Parties may enter into a preliminary agreement, such as the Mediation Agreement, that "provide[s] for the execution of more formal agreements." *Adjustrite Systems, Inc. v. GAB*

6

*Business Services, Inc.*, 145 F.3d 543, 547 (2d Cir. 1998). "[P]reliminary agreements constitute binding contracts, 'even if a more formal agreement never materializes.'" *Jian Wang v. International Business Machines Corp.*, No. 11-CV-2992, 2014 U.S. Dist. LEXIS 165515, at *3 (S.D.N.Y. Oct. 7, 2014) (internal quotations omitted). Although here, the parties' agreement noted a "full settlement agreement w/ applicable releases will follow" (Ex. 1), "the Second Circuit has recognized that a preliminary agreement is binding when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document. Such an agreement is . . . preliminary only in form." *Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 341 (S.D.N.Y. 2010); *see also Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005) (parties are "bound to the ultimate objective despite the fact that a more formal or elaborate writing has yet to be produced"); *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173-74 (E.D.N.Y. 2006); *McNamara v. Tourneau, Inc.*, 464 F. Supp. 2d 232, 239 (S.D.N.Y. 2006) (finding stipulation of settlement following court-annexed mediation is a binding contract).

To determine if a preliminary agreement is binding, "the key . . . is the intent of the parties: whether the parties intended to be bound . . . ." *Adjustrite*, 145 F.3d at 548-49. Courts look to four factors to determine whether a preliminary agreement is binding in the absence of a final executed instrument:

> (1) whether there has been an express reservation of the right not to be bound in the absence of writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* at 549 (quoting *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).

### (i) There was No Express Reservation of the Right Not to be Bound

"When a preliminary agreement is reduced to a writing signed by the parties or their representatives, the plain language of the agreement is the best evidence of the parties' intent." *Wang*, 2014 U.S. Dist. LEXIS 165515, at *3. Here, the language in the Mediation Agreement clearly indicates the parties' intent to be bound. The Mediation Agreement plainly states that, "… agreement has been reached on all issues," (Ex. 1) and the language in the agreement conveys the parties' intent to settle.

Notably, the Mediation Agreement contains *no* express reservation of the right not to be bound. Indeed, an agreement to settle would only be unenforceable if it explicitly stated "the parties did not intend to be bound by the preliminary agreement." *Delyanis.*, 465 F. Supp. 2d at 174 (holding that although a contract agreed to at mediation and executed by the parties "would normally be demonstrative of the parties' intent and enforceable," specific language indicating an intent not to be bound limits the agreement).

Both parties and their attorneys signed the document formalizing the agreement which did not include an express reservation. (Ex. 1). Thus, the first and most significant factor favors enforcement.

### (ii) There Has Been Partial Performance of the Agreement

Although Plaintiff has subsequently stated her intention not to be bound by the agreement, *see McLeod*, 2016 U.S. Dist. LEXIS 137829, at *5 (S.D.N.Y. Sept. 30, 2016) (holding partial performance is inapplicable in a case where a plaintiff attempted to revoke acceptance of an agreement memorialized at a mediation session), the parties have each acted in a way consistent with the agreement. Plaintiff has not attempted to return to work. (Wirch Aff. ¶ 6). Further, Plaintiff, while calling to elect COBRA benefits, informed Infinisource that Defendant would be paying her premiums. (*Id*. at ¶ 8). Not only would Plaintiff be ineligible for COBRA if she were still employed and under Defendant's employee health plan, but absent an

agreement there would be no obligation for Defendant to pay for these premiums. Defendant has paid for said premiums (Ex. 5; Wirch Decl. ¶ 9), paid Plaintiff for a week she did not report to work (August 19-23) (Ex. 4; Wirch Decl. ¶ 7), and paid all sums due to Plaintiff at the time she was separated from employment per New York law (Ex. 4; Wirch Decl. ¶ 7). Defendant is also willing to pay the settlement sum to Plaintiff upon the execution of the full agreement negotiated between the parties. Accordingly, if this factor is applicable, it favors enforcement.

### (iii) All Material Terms were Agreed to

The Mediation Agreement includes all relevant material terms and therefore is a binding, enforceable contract. A binding contract requires a manifestation of mutual assent demonstrating that the parties are in agreement with respect to all material terms. *Tractebel Energy Mktg. v AEP Power Mktg.*, 487 F.3d 89, 95 (2d Cir. 2007). An agreement to agree is unenforceable where a material term is left for future negotiations. *Id.* at 95. However, not every term of a contract "need to be fixed with absolute certainty." *SEC v. Rorech*, 720 F. Supp. 2d 367, 408 (S.D.N.Y. 2010).

Plaintiff has not objected to the terms in the Mediation Agreement. Rather, Plaintiff's counsel has raised two issues with Defendant's counsel: 1) that the agreement lacks the material term of Plaintiff's resignation; and 2) that the agreement lacks terms Plaintiff's counsel considers material. Both of these arguments are unpersuasive.

### 1. Even if the Settlement Agreement did not explicitly state a Material Term, the Court may Infer it

On its face, it is clear that the Mediation Agreement contains all material terms, including Plaintiff's separation from employment, since it indicates when Plaintiff's pay and benefits will cease. (Ex. 1). It be absurd to read this document to imply that Plaintiff, previously an at-will employee, would be expected to work for free for some indefinite period. As a result, even if

9

Plaintiff's resignation were "missing" from the Mediation Agreement, the agreement is still enforceable, as the Court can infer missing terms. *See Dimario v. Coppola*, 10 F. Supp. 2d 213, 221 (E.D.N.Y. 1998) ("Even if parties have failed to mention a material term, it may be implied."). The court can fill in the gaps of a contract when it can reference "something certain" to fill in said gaps. *Id*. Courts recognize two scenarios where a missing term may be inferred: (1) "where the missing term is determinable by necessary implication or construction by reference to objectively ascertainable facts and does not require proof of additional oral words of promise" and (2) "where the missing term is a detail left for later agreement relating to matters such as the date of delivery of deed, for which the law will imply terms of reasonableness." *Lauter v. W & J Sloane, Inc.*, 417 F. Supp. 252, 258-59 (S.D.N.Y. 1976).

Plaintiff's resignation is a necessary implication of the agreement. The Mediation Agreement cites the date where Plaintiff's regular pay and benefits would cease, and calls for Defendant to pay for Plaintiff's COBRA premiums. (Ex. 1). If Plaintiff did not resign her employment as part of the agreement: 1) there would be no need to indicate when her regular pay would cease; and 2) if she were still employed by Defendant, she would not be eligible for COBRA benefits. There is no interpretation of this agreement that does not reasonably include Plaintiff's separation from employment. Therefore, the Court may supply this term. *See Haines v. City of N.Y.*, 41 N.Y.2d 769, 772 (1977) (a court can "inquire into the intent of the parties and supply the missing term if [the term could] be fairly and reasonably fixed by the surrounding circumstances and the parties' intent").

### 2. The Mediation Agreement Does Not Omit Material Terms

To the extent Plaintiff claims that other material terms were left out of the agreement, such an assertion is misplaced. The parties agreed that a more comprehensive agreement would follow the Mediation Agreement (Ex. 1), and when standard language is added to agreements, it

does not invalidate the parties intent to be bound. *See Aguiar v. New York*, No. 06-CV-03334, 2008 U.S. Dist. LEXIS 73631, at *21-25 (S.D.N.Y. Sept. 25, 2008) (generic terms such as a "non-admissions clause," "no retaliation clause," and "waiver and release" are "standard provisions in settlement agreements," and their exclusion from the initial agreement does not invalidate the agreement). Indeed, adding "boilerplate" language that is standard in agreements of this nature does not provide Plaintiff the opportunity to revoke her acceptance. *See Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98-CV-1544, 2000 U.S. Dist. LEXIS 14907, at *9 (S.D.N.Y. 2000) (where plaintiff's counsel added boilerplate language to a substantively identical version of the agreement the court found that this did not undermine the evidence of defendant's intent to be bound by the agreement ). Terms such as a disclaimer of liability, disclaimer of reemployment, return of property, confidentiality, and non-disparagement are standard in settlement agreements for employment-related actions. Their inclusion does not materially change the parties' agreement.

Therefore, because all material terms were included in the Mediation Agreement that were necessary for the formation of a contract, the agreement is enforceable.

### (iv) The Agreement is the Type Usually Committed to Writing

The fourth and final factor is whether the agreement is one normally reduced to writing. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella v. Reader's Digest Association, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997). Although the lack of a written agreement would argue against enforcement, the agreement was in fact reduced to a signed writing. Indeed, plaintiff's (and her attorney's) signing the Mediation Agreement solemnized her then-current intent to be bound by its terms.

Because all four factors favor enforcement of the agreement, the settlement agreement should be enforced.

11

### B. The Settlement Agreement Did Not Provide a Revocation Period

Plaintiff is attempting to rescind her assent to the settlement agreement. (Ex. 3). Plaintiff has argued to Defendant, albeit informally, that a) she revoked the agreement right away, and b) most employment discrimination settlement agreements contain a revocation period. However, the instant agreement contains no such provision. (Ex. 1).

"[A] settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." *Elliott v. City of New York*, No. 11-CV-7291, 2012 U.S. Dist. LEXIS 126133, at *2 (S.D.N.Y. Sept. 5, 2012). Plaintiff's change of heart is not a legal basis for revocation.

Further, Plaintiff cannot provide any legal authority to support her contention that either statutory or common law implies a revocation period, as a matter of right, which is not explicitly provided for in the agreement she signed. To the extent Plaintiff relies on the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1)(G), which requires inclusion of a revocation period in order for a release of claims under the Age Discrimination in Enforcement Act (ADEA) to be deemed "knowing and voluntary", *id.*, such reliance is misplaced. That statute does not apply here; plaintiff did not sue under ADEA, and she has not been asked to release any purported ADEA claims. Accordingly, because there was no revocation period provided for in the agreement, Plaintiff cannot rely on her attempts to rescind her acceptance.

### C. Plaintiff Did Not Enter into the Settlement Agreement Under Duress

Plaintiff has alleged she was under duress due to the pressure applied by her own attorney and the mediator. (Ex. 3). Findings of duress that permit a party to disown its contractual obligations are reserved for extreme and extraordinary cases. *See Granger v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 13-CV-3569, 2014 U.S. Dist. LEXIS 113780, at *9

(S.D.N.Y. Aug. 15, 2014). "An otherwise enforceable agreement may be voidable because of duress where, among other things, the party asserting duress received a wrongful or improper threat." *Francis v. HBO, Inc.*, No. 04-CV-7430, 2005 U.S. Dist. LEXIS 7723, at *10 (S.D.N.Y. Apr. 28, 2005). In particular, to void a contract on the ground of duress, a party must show "(1) a wrongful threat that (2) precluded the exercise of [that party's] free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). "[M]ere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the defendant, will not be deemed duress." *Bus. Incentives Co. v. Sony Corp. of Am.*, 397 F. Supp. 63, 69 (S.D.N.Y. 1975).

Plaintiff has not asserted any "threat." Indeed, in her letter, she only alleges that her own attorney "applied so much pressure," but does not allege any threat, particularly one that precluded the exercise of her free will. (Ex. 3). Even if Plaintiff alleged a threat, her duress claim would still fail, as "pressure exerted by [her] own agents cannot constitute duress as a matter of law." *Granger*, 2014 U.S. Dist. LEXIS 113780, at *11; *accord Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 128 (S.D.N.Y. 2012) ("a party to a contract cannot invoke a duress defense where his own advisor or representative pressured him into acceptance of a deal"); *Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 914 (E.D.N.Y. 1993) (rejecting plaintiff's claim of undue influence by her own attorney because "[d]uress by other than the opposing party to a contract cannot constitute compulsion sufficient to void the contract"), *aff'd*, 33 F.3d 49 (2d Cir. 1994).

Moreover, even if a party can prove the requisite duress at the time of an agreement, it cannot disown its obligations under the contract if it has already accepted benefits under the agreement, as "acceptance of benefits under the agreement constitutes ratification." *E.E.O.C. v.*

*Am. Express Publ'g Corp.*, 681 F. Supp. 216, 219 (S.D.N.Y. 1988).  As discussed *supra*, Plaintiff's request that Defendant pay for her COBRA premiums and Defendant's honoring that request by making payments show that Plaintiff has accepted the benefits of the agreement. Therefore, even if Plaintiff was under duress, which she was not as a matter of law, she would still not be able to void the agreement.

## CONCLUSION

For the reasons set forth in this memorandum of law, Defendant respectfully requests that the Court (a) enforce the settlement agreement, (b) award Defendant its costs and disbursements and, (c) grant Defendant such other relief as the Court deems just and proper.

Dated:  New York, New York
         November 18, 2019

                                        COLLAZO & KEIL LLP

                                        By: /s/
                                            John P. Keil
                                            Daniel J. LaRose
                                            747 Third Avenue, 25th Floor
                                            New York, New York 10017
                                            (212) 758-7600

                                        *Attorneys for Defendant*