UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
PHILANA MURPHY,                                    Case No. 19-CV-1528 (ALC)

        Plaintiff,

    -against-

INSTITUTE OF INTERNATIONAL
EDUCATION,

        Defendant.
------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

Law Offices of G. Oliver Koppell & Associates
Attorneys for Plaintiff
99 Park Ave., Suite 1100
New York, New York 10016
212-867-3838

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Table of Contents |  | ii |
| Table of Authorities |  | iii |
| Preliminary Statement |  | 1 |
| Statement of Facts |  | 2 |
| Argument |  | 6 |
| I. | The Mediation Agreement is Not Binding | 6 |
| | A. There is an Implied Reservation of Rights Not to be Bound in the Absence of a Formal Settlement Agreement | 8 |
| | B. Part Performance Has Not Taken Place | 9 |
| | C. The Failure to Agree to All of the Material Terms Renders the Settlement Unenforceable | 12 |
| | 1. The Need for Plaintiff to Resign is Not in the Mediation Agreement | 13 |
| | 2. The Absence of Other Terms from the Mediation Agreement Renders it Unenforceable | 14 |
| | D. The Need to Reduce the Agreement to a Writing Favors Unenforceability | 16 |
| II. | Plaintiff's Duress at the Time the Mediation Renders the Mediation Agreement Unenforceable | 17 |
| Conclusion |  | 19 |

## TABLE OF AUTHORITIES

Federal Cases                                                                 Page

Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543 (2d Cir. 1998)          7

Aguiar v. New York, 2008 WL 4386761 (S.D.N.Y. Sept. 25, 2008)                        16

Berkson v. Gogo LLC, 97 F. Supp. 3d 359 (E.D.N.Y. 2015)                              12

Cartier Int'l, N.V. v. QVC, Inc., 677 F. Supp. 2d 712 (S.D.N.Y. 2009)                9

Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320 (2d Cir. 1997)               7

Collins v. Harrison–Bode, 303 F.3d 429 (2d Cir. 2002)                                6

Dimario v. Coppola, 10 F.Supp.2d 213 (E.D.N.Y. 1998)                                 14

DiRose v. PK Management Corp., 691 F.2d 628 (2d Cir. 1982)                           19

Foros Advisors LLC v. Dig. Globe, Inc., 333 F. Supp. 3d 354 (S.D.N.Y. 2018)          12

Gaughan v. Rubenstein, 261 F. Supp. 3d 390 (S.D.N.Y. 2017)                           17

Hand v. New York City Housing Preservation and Development, 2017 WL 9481012          7, 15,
      (E.D.N.Y. June 27, 2017)                                                       17

Hellenic Lines, Limited v. Louis Dreyfus Corp., 372 F.2d 753 (2d Cir. 1967)          17

In re Motors Liquidation Co., 580 B.R. 319 (S.D.N.Y. 2018)                           9

Jian Wang v. International Business Machines Corp., 2014 WL 6645251                   8
      (S.D.N.Y. Oct. 7, 2014)

Junjiang Ji v. Jling Inc., 2019 WL 1441130 (March 31, 2019)                          7

Khalian v. Skintej, 2016 WL 10566660 (S.D.N.Y. Dec. 2, 2016)                         9

Langreich v. Gruenbaum, 775 F. Supp. 2d 630 (S.D.N.Y. 2011)                          10

Little v. Greyhound Lines, Inc., 2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005)           8

Lauter v. W & J Sloane, Inc., 417 F.Supp. 252 (S.D.N.Y. 1976)                        14

McIntosh v. Consol. Edison Co., 1999 WL 151102 (S.D.N.Y. Mar. 19, 1999)              17

McLeod v. Post Graduate Ctr. For Mental Health, 2016 WL 6126014     12, 15
     (S.D.N.Y. Sept. 30, 2016)

P.A. Bergner & Co. v. Martinez, 823 F. Supp. 151 (S.D.N.Y. 1993)     9

Pallonetti v. Liberty Mut., 2011 WL 519407 (S.D.N.Y. Feb. 11, 2011)     17

Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481 (2d Cir. 1999)     6

Register.com v. Verio, 356 F.3d 393 (2d Cir. 2004)     7

R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69 (2d Cir. 1984)     7

Rule v. Brine, Inc., 85 F.3d 1002 (2d Cir. 1996)     12

Teachers Ins. & Annuity Assoc. v. Tribune Co., 670 F. Supp. 491 (S.D.N.Y. 1987)     7

Winston v. Mediafare Entm't Corp., 777 F.2d 78 (2d Cir. 1985)     7, 8, 16

State Cases

Haines v. City of New York, 41 N.Y.2d 769 (1977)     14

Kolchins v. Evolution Mkts., Inc., 128 A.D.3d 47 (1st Dept. 2015)     12

Treatises

17A Am. Jur. 2d Contracts § 190 (2015)     13

Restatement (Second) of Contracts § 27 cmt. c (1981)     7

Plaintiff Philana Murphy ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Enforce the Settlement Agreement of defendant Institute of International Education ("Defendant").

Preliminary Statement

After a court ordered mediation, Plaintiff and Defendant entered into a Mediation Agreement purporting to resolve the matter between the parties. However, immediately after the mediation concluded, Plaintiff took steps to continue the litigation and to return to employment with the Defendant. Despite these actions, Defendant seeks to enforce the alleged settlement with the Plaintiff. Defendant cannot do so.

Under the criteria adopted by the courts to determine whether a binding agreement was reached, no enforceable settlement agreement was reached between Plaintiff and Defendant at the mediation. By making the statement in the Mediation Agreement that a full settlement agreement with appropriate releases will follow, the parties implicitly reserved their rights not to be bound by the settlement in the absence of a fuller writing. Part performance under the Mediation Agreement has also not taken place as Defendant has not undertaken many of the tasks that they were required to under the Mediation Agreement. Those that were undertaken by Defendant only took place after Plaintiff had already stated she did not intend to be bound by the Mediation Agreement. The absence of part performance by either party precludes a finding of an intent to be bound to the Mediation Agreement.

Moreover, there are numerous material terms missing from the Mediation Agreement. The most prominent missing term is the need for Plaintiff to separate from employment with Defendant as part of the settlement. Other terms that Defendant wanted in the final settlement are missing as

1

well from the Mediation Agreement.  The absence of a material term favors the unenforceability of the settlement.

Last, the fact that settlement agreements of this type are usually reduced to an agreed-upon final writing, and this one was not, favors a determination that the Mediation Agreement is not binding and enforceable.

Even if this Court were to find that the Mediation Agreement was a binding agreement, it could still not be enforced because Plaintiff was subject to duress during the mediation.  As is alleged by Plaintiff the mediator and Defendant exerted great pressure on her during the mediation, threatening to have her life dissected by white men if she persisted with the litigation, saying this is the most she money she would ever recover, and refusing to allow Plaintiff time to consider the settlement.  For someone such as Plaintiff who was already the victim of racial discrimination by Defendant and who was only represented by court-appointed counsel who was also pressuring Plaintiff to settle, this was extreme pressure that deprived her of her free will in deciding to execute the Mediation Agreement.  This Mediation Agreement was procured under duress and cannot be enforced.

For all of the foregoing reasons, Defendant's motion to enforce the settlement agreement must be denied.

<u>Statement of Facts</u>

Plaintiff pro se brought the instant action pro se alleging employment discrimination by Defendant.  Dckt. No. 2.  On March 1, 2019 this Court issued an order referring this matter to mediation and requesting that a pro-bono attorney be appointed for Plaintiff.  Dckt. No. 7.  Pro-bono counsel was located and appointed for Plaintiff.  Dckt. No. 10.  A mediator was appointed, and a mediation session was held on August 16, 2019.  Murphy Dec. ¶3.

2

At the conclusion of the mediation, the parties signed a document entitled Mediation Agreement.  Murphy Dec. Ex. 1.  The Mediation Agreement provided that, in consideration to a general release from Plaintiff and a Stipulation of Discontinuance, Defendant will furnish to Plaintiff:

1)    One year's worth of salary;

2)    Two months of COBRA premium contributions; and

3)    Regular pay and benefits until August 23, 2019.

*Id.*  The Mediation Agreement concludes with a statement that "A full settlement agreement w/applicable releases will follow."  *Id.*

Contrary to the Defendant's claim, Def. Br. at 2, nothing in the Mediation Agreement references Plaintiff separating from her employment with Defendant.  Nothing in the Mediation Agreement discusses material terms of the resolution of this matter such as: the scope of the release, no admission language, breadth of confidentiality, return of property (work and personal), allocation of payments for tax purposes, non-disparagement and/or recommendations, etc.  In the draft Settlement Agreement subsequently prepared by Defendant's counsel, such provisions were expressly addressed.  LaRose Dec. Ex. 4.

Plaintiff did not wish to enter the Mediation Agreement.  As Plaintiff wrote to the Court in an email dated August 22, 2019:

I was under great duress when I signed my mediation agreement on August 16, 2019. I represented myself, and had the legal assistance of NYLAG for the mediation. As we neared the final agreement of the mediation, I expressed to my NYLAG representative Ms. Toes Keane that I did not approve of the settlement amount because it differed from the amount we discussed. I stated multiple times that I was not comfortable signing the agreement. I was nervous and confused, and asked Ms. Toes Keane if I could contact my mother and she allowed me to use her cell phone. My mother told me not to sign any documents and that she would assist in paying for legal representation. After I got off of the phone, I expressed to the Ms. Toes Keane that I wish not to sign the document again. I told her I was very appreciative of her help and would be seeking paid legal representation

3

elsewhere. Ms. Toes Keane did not seem happy with my answer and told me that mediation was the nicer portion of my lawsuit. The mediator also told me that I would be stuck in a room filled with white men that would question every aspect of my life for hours, this seemed very intimidating. I asked to use the bathroom and stayed there for 10 minutes because I needed to clear my head. When I came back to the mediation room, I asked if I could have until Monday to decide and was told no. I was told if I didn't sign the medication sheet that day it would be the most compensation that I would ever receive. I expressed how much I suffered at my job and a year's salary as a single mother, with no job security wasn't enough for me in a city like New York. After the mediator and Ms. Toes Keane applied so much pressure, I was so sad and felt I had no choice but to sign. I asked if they could leave the room before me because I felt so defeated and didn't want them to see me cry. I have now found a legal representative and would like to proceed with my case and not finalize the agreement that we discussed.

Murphy Dec. Ex. 2.

After the mediation was completed, on August 21, 2019 this Court entered an order stating that insofar as the case has been or will be settled, the case was discontinued "without prejudice to restoring the action to this Court's calendar if the application to restore the action is made within thirty (30) days."  Dckt. No. 20.

Because of her discomfort with the mediation and the outcome, Plaintiff immediately took steps to resume the action.  The mediation took place on Friday, August 16th, 2019 and on the following Monday, August 19th, Plaintiff called the Court and then called new counsel for assistance in this matter. Murphy Dec. ¶¶11-12.  Plaintiff was instructed to send an email to the Court about her duress at the time of the mediation. Murphy Dec. ¶11.  Plaintiff then did so in her email of August 22nd, 2019.  Murphy Dec. Ex. 2.

Contrary to Defendant's claim, Def. Br. at 4, Plaintiff attempted to return to work following the mediation.  On Monday, August 19th, the first business day following the execution of the Mediation Agreement, Plaintiff took numerous steps to indicate her desire not to continue with the tentative settlement.  This includes contacting the Court telephonically to inquire as to what she should do, as well as attempting to retain new private counsel to discuss the matter.  Murphy Dec.

¶¶11-12.  On that date Plaintiff also contacted the counsel who represented her at the mediation, who advised her that Plaintiff was not allowed to return to work and that she should sign the final agreement.  Murphy Dec. ¶12.  Plaintiff informed her counsel that she would refuse to do so.  *Id.*  Plaintiff also attempted to login to her work laptop (that she still retains), but her login was inactive. Murphy Dec. ¶14.

During a team meeting on Tuesday, August 20th, Plaintiff's supervisor Bassim Abassi mentioned to the team that Plaintiff had quit.  Murphy Dec. ¶15.  This message was relayed to Plaintiff by Plaintiff's union representative, Janet Hoyte.  *Id.*

Subsequently, Plaintiff sent an email to the Court on August 22, 2019 stating that she did not wish to proceed further with the proposed settlement, as she was subject to duress at the time the agreement was negotiated.  Murphy Dec. ¶11.  Plaintiff further contacted her union representative on August 26, 2019 to inquire about her employment status with the Defendant. Murphy Dec. ¶16.  At one-point Plaintiff had a conference call with Betty Mendez from the union headquarters at DC1707 and Janet Hoyte about returning to work.  Murphy Dec. ¶ 17.  They told me to follow the instructions of my lawyer on that issue. *Id.*  All of these activities evince a prompt desire by Plaintiff to return to work.  Plaintiff ultimately did not return because the responses to Plaintiff's efforts to return to Defendant actions made it clear she could not return without permission, as it is likely a confrontation would ensue.  Murphy Dec. ¶19.

Despite Defendant's claim of part performance under the terms of the Mediation Agreement, it was only after the undersigned counsel became involved and requested that Plaintiff be allowed to resume work, that Defendant began to purportedly perform under the agreement.  As set forth in the accompanying Declaration of Daniel F. Schreck, during the course of discussions over a letter to be submitted to the Court, counsel for Defendant disputed Plaintiff's allegation that

COBRA payments had not been made.  Schreck Dec. ¶5.   Defendant then produced a document showing that payment was first made on October 2, 2019, six weeks after Plaintiff had made clear she did not wish to go through with the settlement.  Schreck Dec. Ex. 2.  Indeed, Plaintiff had contacted the COBRA benefits provider in September and had been told that Defendant was waiting on Plaintiff to sign the final Settlement Agreement and that Defendant would not release the voucher for COBRA coverage until then.  Murphy Dec. ¶22.  Plaintiff received invoices for COBRA payments.[1]  Murphy Dec. Ex. 3.

Furthermore, Defendant concedes that it will only pay Plaintiff the settlement sum "upon the execution of the full agreement negotiated between the parties."  Def. Br. at 9. Indeed, the proposed Settlement Agreement prepared by Defendant confirms as much as it states that Plaintiff agrees that: "(iv) in the absence of his entering into this Agreement, she would not be entitled to the Settlement Sum."  LaRose Dec. Ex. 4 at 10.  Plaintiff has never received the settlement sum. Murphy Dec. ¶25.  As is more fully set forth below, Defendant's admission that they do not believe that it is required to honor the terms of the Mediation Agreement by paying the settlement sum until such time as a full Settlement Agreement is agreed upon and executed is probative evidence that no enforceable agreement was entered into when the Mediation Agreement was made.

Argument

I.    <u>The Mediation Agreement is Not Binding</u>

It is well established that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison–Bode*, 303 F.3d 429, 433 (2d Cir. 2002) quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). In New York, a contract is valid if there is an offer and acceptance,

---

[1] Defendants concede that all other payments made under the Mediation Agreement were made on August 30, 2019, after Plaintiff had expressed her desire not to be bound by the Mediation Agreement.  Def. Br. at 3.

consideration, mutual assent, and an intent to be bound. See *Register.com v. Verio*, 356 F.3d 393, 427 (2d Cir. 2004).

A court must consider the following four factors in determining whether parties intend to bind themselves to a settlement agreement before they execute what both parties consider to be the final document:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing;
>
> (2) whether there has been partial performance of the contract;
>
> (3) whether all of the terms of the alleged contract have been agreed upon; and
>
> (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80-1 (2d Cir. 1985) citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-77 (2d Cir. 1984); *Restatement (Second) of Contracts* § 27 cmt. c (1981). No single factor is decisive, but each factor provides significant guidance. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997). "[T]he existence of even 'minor' or 'technical' points of disagreement in draft settlement documents [is] sufficient to forestall the conclusion that a final agreement on all terms had been reached." *Id.* at 325 quoting *Winston*, 777 F.2d at 82-83. See also *Junjiang Ji v. Jling Inc.*, 2019 WL 1441130, at *12 (March 31, 2019) (declining to enforce a settlement discussed in open court).[2]

---

[2] While the Defendant relies on separate line of authority that distinguishes between fully binding preliminary agreements that are "preliminary only in form," requiring only "a more elaborate formalization of the agreement[,]"and preliminary commitments that leave certain terms open and merely bind the parties to make a good faith effort to resolve the open matters without insisting on new terms. *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998) quoting *Teachers Ins. & Annuity Assoc. v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987). There is no substantial difference between the two standards of *Winston* and *Adjustrite*, but to the extent there is such a difference the courts look to *Winston* to resolve disputes of this nature. *Hand v. New York City Housing Preservation and Development*, 2017 WL 9481012, at *2 (E.D.N.Y. June 27, 2017).

The application of the *Winston* factors to the instant case requires a finding that the Mediation Agreement is not binding.[3]

A.   There is an Implied Reservation of Rights Not to be Bound in the Absence of a Formal Settlement Agreement

While neither party expressly reserved the right not to be bound in the absence of a written agreement, the Mediation Agreement expressly contemplates that the parties will enter into a formal writing. The Mediation Agreement states that: "A full settlement agreement w/applicable releases will follow."  Murphy Dec. Ex. 1.  Consequently, an explicit reservation of the right not to be bound absent a written agreement was wholly unnecessary, as it can be inferred that it was Defendant's intention not to pay the settlement amount to Plaintiff absent a final written settlement. *Hand*, 2017 WL 9481012, at *2.  Defendant's intention not to pay has been confirmed insofar as Plaintiff was informed by the benefits administrator that she would not receive COBRA until she executed the Settlement Agreement.  Murphy Dec. ¶22.  It is also confirmed by Defendant's statement in this motion, also set forth in the proposed settlement agreement, that it will not tender payment of the settlement sum absent the execution of the Settlement Agreement.  Def. Br. at 9.

Accordingly, even to the extent that this factor may favor Defendant, the language of the Mediation Agreement requires that it be given minimal weight.  *Id.*

The case relied upon to the contrary by Defendant is not persuasive.  In *Jian Wang v. International Business Machines Corp.*, 2014 WL 6645251 (S.D.N.Y. Oct. 7, 2014), the Memorandum of Understanding that was entered into contained the following language: "This is a binding agreement and contains all material terms. In furtherance of it, the parties shall enter into a more extensive Confidential Negotiated Settlement Agreement and General Release ["Release"]

---

[3] Insofar as the court failed to apply the Winston factors in its analysis, the decision of the court in *Little v. Greyhound Lines, Inc.*, 2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005), cited by Defendant, should be accorded little weight.

whose terms shall not be inconsistent with this agreement." *Id*. Comparable language is not present in the Mediation Agreement herein.

For similar reasons, the case of *Khalian v. Skintej*, 2016 WL 10566660 (S.D.N.Y. Dec. 2, 2016), cited by Defendant, is readily distinguishable. In that case the Memorandum of Agreement said that it was "final and binding," *id*. at *2, language not used in the instant Mediation Agreement. Moreover, there was a specific schedule for payments in the agreement in *Khalian* that is not present here. *Id*. It should also be noted that the plaintiff in *Kahlian* failed to oppose the motion to enforce the settlement, *id*. at *2, leaving the defendant's arguments unopposed.

In light of the foregoing, the lack of an express reservation of the right to be bound does not favor the enforcement of the settlement.

B.    Part Performance Has Not Taken Place

Contrary to Defendant's claim, Def. Br. at 8-9, Defendant has not partially performed under the Mediation Agreement. In the absence of such performance, there can be no enforcement of the settlement.

The absence of partial performance weighs against enforcing the settlement. *In re Motors Liquidation Co.*, 580 B.R. 319, 346 (S.D.N.Y. 2018) citing *Cartier Int'l, N.V. v. QVC, Inc.*, 677 F. Supp. 2d 712, 716 (S.D.N.Y. 2009) (finding that there was no partial performance under the purported settlement because the defendants did not make any payments to the plaintiff). "Partial performance requires some actual performance of the contract.... [One party] must have conferred something of value upon [the other party] which [was] accepted." *P.A. Bergner & Co. v. Martinez*, 823 F. Supp. 151, 157 (S.D.N.Y. 1993).

In this case, the provisions of the settlement were either not performed or were done after Plaintiff had already stated a desire to revoke. First, the settlement sum has not been paid to

Plaintiff.  Murphy Dec. ¶25.  Defendant has admitted that payment of such amount is wholly conditioned on execution of the formal Settlement Agreement.  Def. Br. at 9.  That Defendant believes that such performance is solely conditional on entering into a further writing is evidence that they did not believe the earlier writing of the Mediation Agreement to be binding upon them.

In a similar vein, Defendant refused to provide Plaintiff with COBRA benefits following the execution of the Mediation Agreement.  When Plaintiff called to inquire about the status of her benefits, she was informed that payment would not be made until she executed the Settlement Agreement.  Murphy Dec. ¶22.  Only after Plaintiff's counsel had reached out about Plaintiff returning to work and resuming the litigation did Defendant pay for COBRA in October, 2019.  See Murphy Dec. ¶¶20-24; Schreck Dec. ¶¶3-6.  In delaying COBRA payments upon the condition that Plaintiff enter into the final Settlement Agreement, Defendant demonstrated it did not intend to be bound by the Mediation Agreement.

Defendant further admits that it was on August 30th, 2019 that Plaintiff was paid for all unpaid hours of work, salary for the week of August 16, 2019 through August 23, 2019, and all unused paid time off.  Def. Br. at 3.  However, this payment was made more than ten days after Plaintiff had expressed her unwillingness to enter into a final settlement, on August 19, 2019, and eight days after Plaintiff had formally expressed her reservations to the Court about the settlement in an email.  Defendant's making a payment well-after Plaintiff had already expressed a desire not to be bound by the settlement does not support a claim of genuine part performance.  See *Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 636-37 (S.D.N.Y. 2011) ("We infer that the timing of performance may be significant, and that if one of the parties sought to repudiate the agreement before partial performance, the fact that the other side persisted in performing would have little weight.").

10

The claim by Defendant that Plaintiff did not attempt to return to work after the mediation, Def. Br. at 8, is inaccurate. On Monday, August 19th, the first business day following the execution of the Mediation Agreement, Plaintiff took numerous steps to indicate her desire not to continue with the tentative settlement. Murphy Dec. ¶¶11-12. This includes contacting the Court telephonically to inquire as to what she should do, as well as attempting to retain new private counsel to discuss the matter. Murphy Dc. ¶11. On August 19th, Plaintiff also contacted the counsel who represented her at the mediation, who advised her that Plaintiff was not allowed to return to work and that she should sign the final agreement. Murphy Dec. ¶ 12. Plaintiff informed her counsel that she would refuse to do so. *Id*. Plaintiff also attempted to login to her work laptop (that she still retains), but her login was inactive. Murphy Dec. ¶ 14.

During a team meeting on Tuesday, August 20th, Plaintiff's supervisor Bassim Abassi mentioned to the team that Plaintiff had quit. Murphy Dec. ¶15. This message was relayed to Plaintiff by Plaintiff's union representative, Janet Hoyte. *Id*. Such statement was an indicator to Plaintiff that she could not return to work.

Subsequently, Plaintiff sent an email to the Court on August 22, 2019 stating that she did not wish to proceed further with the proposed settlement, as she was subject to duress at the time the agreement was negotiated. Murphy Dec. ¶11. Plaintiff further contacted her union representative on August 26, 2019 to inquire about her employment status with the Defendant. Murphy Dec. ¶16. At one-point Plaintiff had a conference call with Betty Mendez from the union headquarters at DC1707 and Janet Hoyte about returning to work. Murphy Dec. ¶17. They told me to follow the instructions of my lawyer on that issue. *Id*. All of these activities evince a prompt desire by Defendant to return to work. Plaintiff's conduct in attempting to return to work was reasonable in these circumstances, especially considering the fact that she was repeatedly advised

not to return to work.  That Plaintiff did not appear at her office building to be escorted out by security, Murphy Dec. ¶19, does not mean she partially performed under the settlement.

In light of the foregoing, the factor of part performance does not favor the enforcement of the settlement.[4]

### C.    The Failure to Agree to All of the Material Terms Renders the Settlement Unenforceable

Defendant states that the terms of the settlement between the parties requires Plaintiff to leave her employment with Defendant.  Def. Br. at 2.  However, that term is nowhere set forth in the Mediation Agreement.  Murphy Dec. Ex. 1.  In addition, numerous other material terms that Defendant contemplates being part of the Settlement Agreement are nowhere mentioned in the Mediation Agreement.  In the absence of such material terms, the settlement cannot be enforced.

If a contract leaves open material terms, the contract is simply not enforceable, either as a preliminary agreement or otherwise. *Foros Advisors LLC v. Dig. Globe, Inc.*, 333 F. Supp. 3d 354, 361 (S.D.N.Y. 2018).  While parties need not fix every term "with complete and perfect certainty for a contract to have legal efficacy," *Kolchins v. Evolution Mkts., Inc.*, 128 A.D.3d 47,61 (1st Dept. 2015), material terms should not be missing altogether. See, e.g., *Rule v. Brine, Inc.*, 85 F.3d 1002, 1010 (2d Cir. 1996) ("[U]nder New York law no enforceable contract comes into being when the parties leave a material term for future negotiations....").  Terms fixing duration, payment, and the parties' obligations are central to the formation of any contract, see, e.g., *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015) (material terms include "'subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production,

---

[4] Contrary to Defendant's claim, *McLeod v. Post Graduate Ctr. For Mental Health*, 2016 WL 6126014 (S.D.N.Y. Sept. 30, 2016), does not stand for the proposition that part performance is inapplicable in a case where the plaintiff attempted to revoke acceptance of an agreement memorialized at a mediation session. Def. Br. at 8.  McLeod simply states that the partial performance factor is inapplicable in that case because neither side partially performed. *Id.* at *2.

so that the promises and performance to be rendered by each party are reasonably certain.'") quoting 17A *Am. Jur. 2d Contracts* § 190 (2015).

### 1.    The Need for Plaintiff to Resign is Not in the Mediation Agreement

There is no dispute that the Meditation Agreement contains no mention of Plaintiff's need to resign or otherwise separate herself from employment by the Defendant. Murphy Dec. Ex. 1. Any requirement that Plaintiff leave Defendant's employ for purposes of the settlement is clearly a material term that should have been noted in the Mediation Agreement. The absence of such material term renders the settlement unenforceable.

Contrary to Defendant's arguments, Def. Br. at 10, Plaintiff's resignation from Defendant is not a necessary implication of the Mediation Agreement. Indeed, the terms are ambiguous. Under the Mediation Agreement, the two months of COBRA contributions could be made at any time when Plaintiff ceased employment with Defendant. These COBRA contributions could be due immediately, six weeks from execution, six months from execution or six years from execution. There is no upward limit on when they may be paid under the Mediation Agreement. The COBRA contributions are an additional form of compensation Plaintiff was receiving as part of the settlement that is only payable upon the termination of Plaintiff's employment. It does not require that Plaintiff's employment terminate immediately. As such, whether such language requires Plaintiff to immediately separate herself from Defendant is ambiguous at best and no inference can be drawn.

Additionally, and contrary to Defendant's claim, Def. Br. at 10, the Mediation Agreement does not state when Plaintiff's regular pay and benefits would cease. The regular pay and benefits until August 23, 2019 could simply be interpreted as additional compensation for Plaintiff a part of the settlement; to wit, getting pay and benefits for time Plaintiff does not have to work. To

claim that the only conclusion to be drawn from that term is that Plaintiff agreed to resign from employment effective August 23, 2019 is misplaced.

The cases cited by Defendant do not allow for the implication of the material term of separation from employment. In *Dimario v. Coppola*, 10 F.Supp.2d 213 (E.D.N.Y. 1998), the court only allowed the implication of a term based on proof of custom and practice in the industry regarding the terms of compensation. *Id*. at 221. That is not applicable here. In *Lauter v. W & J Sloane, Inc*., 417 F.Supp. 252 (S.D.N.Y. 1976), the court denied enforcement of an agreement under the statute of frauds because the parties disputed what had allegedly been agreed upon. *Id*. at 261. *Haines v. City of New York*, 41 N.Y.2d 769, 772 (1977), specifically limits its holding to utilizing the intent of the parties to fix a contract's duration. It says nothing about implying separation from employment when no such separation is called for in the agreement. As such, these cases are unhelpful to Defendant.

In arguing for the implication of the material term of resignation in the settlement, Defendant makes self-contradictory arguments in their brief. On the one hand, Defendant argues that the plain language of the Mediation Agreement should govern what was agreed upon by the parties. Def. Br. at 8. On the other hand, Defendant then argues that a material term of the settlement can be inferred through implication. Def. Br. at 9-10. Defendant cannot have it both ways and seek to enforce a term of the agreement that is plainly not there.

In the absence of the necessary material term of separation from employment, the settlement between the parties cannot be enforced.

    2.   <u>The Absence of Other Terms from the Mediation Agreement Renders it Unenforceable</u>

In addition to the need for Plaintiff to terminate her employment, numerous other provisions of the settlement were not included in the Mediation Agreement. Missing from the

14

Mediation Agreement is any discussion about the scope of the release, no admission language, confidentiality, return of property (work and personal), allocation of payments for tax purposes, non-disparagement/recommendations, no-rehiring, etc. All of these are terms that the parties had to agree to in order for there to be an enforceable agreement. Defendant admits as much through its inclusion of these terms in the proposed Settlement Agreement. LaRose Dec. Ex. 4. Insofar as these terms were not agreed to, the settlement cannot be enforced.

In *Hand*, 2017 WL 9481012, the court found that a Preliminary Agreement signed at a mediation was unenforceable. The court found that material terms had not been agreed upon when the Preliminary Agreement did not contain terms defendant wished to include in the final settlement agreement. *Id*. at *3-4. These terms included a broader release, a no-admission clause, a clause stating that the agreement would not be used in any other proceedings, and a clause requiring for plaintiff to provide certain information to defendant. *Id*. Insofar as none of these provisions were in the Preliminary Agreement, the desire to include them in the final agreement militated against enforceability. Similarly here, in the absence of these provisions in the Mediation Agreement, the settlement cannot be deemed to be binding.

*McLeod*, 2016 WL 6126014, relied upon by Defendant, Def. Br. at 6, is also very informative in this regard. In *McLeod*, the Memorandum of Understanding included the payment of a sum certain, strict confidentiality, non-disparagement, a no-rehire provision, non-admission language, and a reference letter with dates of employment. *Id*. at *2. The parties further agreed that Ms. McLeod would execute a full release of all claims. *Id*. In choosing to enforce that settlement, the court specifically noted that in challenging the settlement, Ms. McLeod never alleged "that the agreement is incomplete or missing essential terms." *Id*. This is in contrast to

this case, where virtually none of these terms are present.  In such circumstances, the settlement cannot be enforced.

Furthermore, Defendant misrepresents the holding of the court in *Aguiar v. New York*, 2008 WL 4386761 (S.D.N.Y. Sept. 25, 2008).  Def. Br. at 11.  In *Aguiar*, the parties had orally agreed, on the record in open court, to a no-admissions clause, a no retaliation clause and a waiver and release to be part of the settlement.  *Id*. at *1-2.  Later, when the parties tried to enter a formal settlement and had a dispute over the terms of those clauses, the court found that the dispute over the language of those "generic terms" was not evidence of a desire by the parties not to be bound to the settlement until such time as the language was agreed upon.  *Id*. at *9.  The court never held that the complete absence of agreement to those terms could be used to subsequently bind Plaintiff to those terms as part of a final agreement.  In contrast to *Aguiar*, in this case, there has never been any kind of agreement to any such terms.  The parties here cannot have agreed to have been bound to an agreement on terms such as these where the terms had not been contemplated or discussed at the time of entering into the Mediation Agreement.  A court cannot bind the parties to terms of a settlement agreement that there was no evidence the parties were contemplating.

Accordingly, in the absence of material terms to the Mediation Agreement, a settlement cannot be enforced against Plaintiff.

D.    The Need to Reduce the Agreement to a Writing Favors Unenforceability

Defendant misunderstands the fourth factor of the *Winston* test.  The question is not whether there was a Mediation Agreement in writing.  The question is whether the settlement agreement here was not the type of agreement that must be committed to a final agreed-upon writing prior to becoming effective.  *Winston*, 777 F.2d at 83.  Defendant concedes that settlements of this nature are required to be in writing and agreed.  Def. Br. at 11.  Where the final settlement

has never been agreed upon in circumstances when such a final settlement agreement is usually entered into, the fourth factor favors the unenforceability of the settlement. *Hand*, 2017 WL 9481012, at *4.

Based upon the foregoing, the facts demonstrate that at least three of three four Winston factors favor denial of the enforceability of the settlement. Accordingly, the alleged settlement cannot be enforced.

II.    Plaintiff's Duress at the Time the Mediation Renders the Mediation Agreement Unenforceable

Plaintiff was subject to intense pressure put on her at the mediation. She was coerced and bullied by all the parties and the mediator to settle the case, notwithstanding the fact that she unambiguously stated that she did not want to settle. If the Mediation Agreement is deemed to be enforceable, then the coercive and oppressive tactics by the Defendant and the mediator during the mediation warrant voiding of the agreement.

In general, repudiation of an agreement on the ground that it was procured by duress requires a showing of "wrongful and oppressive conduct that precluded the plaintiff from the exercise of [her] own free will." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) quoting *McIntosh v. Consol. Edison Co.*, 1999 WL 151102, at *2 (S.D.N.Y. Mar. 19, 1999), *aff'd in unpublished table decision*, 216 F.3d 1072 (2d Cir. 2000). "Courts look for evidence of high pressure or deceptive tactics," to determine "whether a party lacked 'meaningful choice." *Pallonetti v. Liberty Mut.*, 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011). A key element is the state of mind of the person threatened. *Hellenic Lines, Limited v. Louis Dreyfus Corp.*, 372 F.2d 753, 757 (2d Cir. 1967). "It always is for the interest of a party under duress to choose the lesser of two evils. But the fact that a choice was made according to interest does not exclude duress. It is the characteristic of duress properly so called. The question is one of degree." *Id.*

17

As is set forth in Plaintiff's declaration, Plaintiff was subject to wrongful; and oppressive conduct that deprived her of her free will. In addition to the conduct of her court appointed attorney pushing Plaintiff to sign, Murphy Dec. ¶¶4-5, Plaintiff was subject to extreme pressure by the mediator and Defendant. As someone who already believed herself to be a victim of racial discrimination by Defendant, Plaintiff was informed that if she chose to continue with the lawsuit and not settle, then a room full of white men would dissect and question every aspect of her life for hours. Murphy Dec. ¶6. Such a threat was incredibly intimidating. *Id*. Moreover, when Plaintiff asked for the weekend to consider the offer made to her she was told no, that this was the best offer that would ever be made to her. Murphy Dec. ¶7. Plaintiff repeatedly requested the opportunity to find hired counsel (as opposed to one appointed by the Court) and to end the mediation, but she was denied. *Id*. Because of these statements, Plaintiff felt like she had no choice but to sign the Mediation Agreement right then. Murphy Dec. ¶8. These high-pressure tactics were designed to deprive Plaintiff of her free will and force her to enter into a settlement. Such conduct constitutes duress.

In opposing the voiding of the Mediation Agreement on the grounds of duress, Defendant makes several erroneous arguments. First, Defendant claims that Plaintiff only alleges that pressure was imposed upon Plaintiff by Plaintiff's appointed counsel. Def. Br. at 13. However, as Plaintiff's Declaration makes clear, improper pressure was placed on her by opposing counsel and the mediator as well. Murphy Dec. ¶¶ 6-8. Improper conduct by such parties can constitute duress.

Moreover, Plaintiff's immediate repudiation of the contract demonstrates that Plaintiff has not accepted benefits under the agreement and has not ratified it. On the first business day after the Mediation Agreement was signed, Plaintiff began reaching out to the Court and her attorneys

about her unhappiness with what transpired and how to continue the litigation. Murphy Dec. ¶¶10-12. A few days later, Murphy sent an email to the Court about this topic. Murphy Dec. Ex. 2. The person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so. *DiRose v. PK Management Corp.*, 691 F.2d 628, 633-4 (2d Cir. 1982) (citations omitted). Plaintiffs actions starting the first day after the mediation amply demonstrate her repudiation of the Mediation Agreement.

Defendant's claim that Plaintiff ratified the agreement by accepting COBRA benefits under it, Def. Br. at 13-14, ignores Plaintiff's immediate repudiation under the agreement. Moreover, it ignores the fact that Defendant did not pay for Plaintiff's COBRA coverage for September until October, after Plaintiff's counsel had reached out about Plaintiff returning to work and resuming the litigation. See Murphy Dec. ¶¶20-24; Schreck Dec. ¶¶3-6. The evidence is clear that Plaintiff did not ratify the agreement she had already repudiated.

For all of the foregoing reasons, there is ample evidence that the Mediation Agreement was procured through duress. As such, it cannot be enforced.

<u>Conclusion</u>

For all of the foregoing reasons, Defendant's motion to enforce the settlement must be denied in all respects, and this matter be restored to the active docket of this Court for further proceedings.

Dated: New York, New York
       December 20, 2019

                                        Law Offices of G. Oliver Koppell & Associates

                                        By:_____/s/_____
                                        G. Oliver Koppell (GOK-4851)
                                        Daniel F. Schreck (DS-7680)
                                        *Attorneys for Plaintiff*

99 Park Ave., Suite 1100
New York, New York 10016
(212) 867-3838