USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/23/2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
**PHILANA MURPHY,**                                              :
                                                                :
                                              **Plaintiff,**     :
                                                                :        **19-CV-1528 (ALC)**
                              **-against-**                      :
                                                                :        **ORDER ADOPTING R&R**
**INSTITUTE OF INTERNATIONAL EDUCATION,**   :
                                                                :
                                              **Defendant.**     :
                                                                :
-------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff objects to the Report and Recommendation ("R&R") issued by the Honorable Robert W. Lehrburger. ECF No. 42.  Magistrate Judge Lehrburger's R&R recommends that the Court grant Defendant's motion to enforce the settlement agreement.  For the reasons set forth below, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the R&R in its entirety.

## BACKGROUND

The factual and procedural history is set forth in detail in Judge Lehrburger's R&R. Nevertheless, a brief discussion is warranted for background.

The Parties in this employment discrimination action engaged in court-referred mediation where Plaintiff was represented by pro bono counsel. R&R at 1-2.  Following mediation, the Parties, counsel, and mediator signed a "Mediation Agreement" which set out the terms of the agreement between the Parties. *Id* at 2.  Plaintiff alleges that during mediation she was "nervous and confused," that she told her court-appointed attorney that she did not approve of the settlement amount, that her attorney "applied extreme pressure" on her to settle, and that she felt intimidated. *Id.* at 2-3.  Plaintiff's request for additional time to consider the agreement was rejected and she

was told that it was "the most compensation that [she] would ever receive." *Id.* at 3.  Given the pressure from the mediator and her attorney, Plaintiff felt she "had no choice but to sign." *Id.*

Plaintiff's counsel and defense counsel later negotiated a "Full Settlement Agreement" which provided additional terms including Defendant's disclaimer of liability, Plaintiff's agreement not to seek employment with Defendant, a confidentiality agreement, and a non-disparagement clause, among other provisions. *Id.* at 4.  Plaintiff never signed the Settlement Agreement and instead retained new counsel and expressed to the Court that she was under duress when she signed the Mediation Agreement. *Id.* at 5.  Plaintiff did not return to work and, consistent with the Mediation Agreement, Defendant paid Plaintiff for her final week (i.e., August 19 to August 23) and for all accrued but unused paid time off. *Id.* at 6.  Plaintiff also inquired about the COBRA coverage Defendant was supposed to provide pursuant to the Mediation Agreement, though Defendant never ended up paying for her COBRA coverage. *Id.* at 7.

On November 18, 2019, Defendant filed a motion to enforce the Mediation Agreement. ECF Nos. 29-32.  Plaintiff opposed on December 20, 2019. ECF Nos. 35-37.  Finally, Defendant replied on January 10, 2020. ECF Nos. 38-39.  This Court referred the motion to Judge Lehrburger on May 19, 2020. ECF No. 40.  Judge Lehrburger issued his report and recommendation on July 27, 2020. ECF No. 42.  Plaintiff filed objections within fourteen days, ECF No. 43, and Defendant replied fourteen days after that, ECF No. 44.

## LEGAL STANDARD

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3).  A party may object to a report and recommendation within fourteen days. *Id.*  The district court "shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." *Id.*  With respect to any portion of the report and recommendation to which no objection is made, "the Court may adopt the Report if there is no clear error on the face of the record." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 401 (S.D.N.Y. 2010).  "A magistrate judge's decision is clearly erroneous only if the district court is left with the definite and firm conviction that a mistake has been committed." *Stenson v. Heath*, No. 11-CV-5680, 2015 WL 3826596, at *2 (S.D.N.Y. June 19, 2015) (citation and quotation marks omitted).

Objections must be "specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).  "[W]here objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," the Court should review only for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and quotation marks omitted).  This is because "[i]t is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Id.* (citation and quotation marks omitted).

## DISCUSSION

Judge Lehrburger concluded that the Mediation Agreement was a binding settlement agreement and that Plaintiff could not evade the Agreement by claiming duress.  Plaintiff objects and argues that the Mediation Agreement was only a preliminary, non-binding agreement and that she signed the agreement under duress from her counsel and the mediator. *See* Plaintiff's Objection to the Report and Recommendation ("Pl. Objections") (ECF No. 42) at 1.

I. **Enforceability of the Mediation Agreement**

The Parties agree that the four factors set forth in *Winston v. Mediafare Entertainment Corp.* govern whether the Mediation Agreement is enforceable.  These factors are: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." 777 F.2d 78, 80 (2d Cir. 1985).

A. **Express Reservation of the Right Not to Be Bound**

Judge Lehrburger concluded that language of the Mediation Agreement reflects an intent to be bound because the title of the document is "Mediation Agreement;" the Agreement includes the language "IT IS HEREBY AGREED" and "agreement has been reached on all issues;" and there is an absence of an express reservation of the right not to be bound. R&R at 15-16.  Plaintiff objects for three reasons.[1]

First, Plaintiff argues that the Report and Recommendation "wholly overlooks the presence of a merger clause in the proposed Settlement Agreement," and that this clause reflects the Parties' intent to not be bound by the Mediation Agreement.  The Settlement Agreement states: "This is the parties' entire agreement as to the subject matter hereof and it may not be modified except by a mutually signed written agreement." Pl. Objections at 4.  Plaintiffs only support for the

---

[1] Plaintiff objects for a fourth reason already addressed in by Judge Lehrburger in the R&R. Plaintiff argues that the Mediation Agreement included a reservation of the right not to be bound because it provided that the final agreement would not be effective or enforceable until Plaintiff delivered a signed copy of the final agreement to Defendant. Pl. Objections at 6.  This argument was already raised in front of, and rejected by, Judge Lehrburger. *See* R&R at 16-17 ("[S]uch language merely indicates formation of a preliminary agreement, which can be, and in this case is, a fully binding agreement.").  The Court does not find Judge Lehrburger's conclusion to be clear error, and even reviewing it *de novo*, this language in the Mediation Agreement does not expressly reserve the right not to be bound.

proposition that this merger clause reflects the Parties' intent not to be bound is *Ciaramella v. Reader's Digest Ass'n, Inc.*, which notes that "[t]he presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." 131 F.3d 320, 324 (2d Cir. 1997). However, *Ciaramella* concerned a written agreement that followed an allegedly "enforceable oral settlement," *id.* at 321, and it is better read to support the proposition that merger clauses can reflect "a clear intent to be bound only once the Agreement was signed by both Parties," *Natl. Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 357 (S.D.N.Y. 2012). This reasoning is inapposite here, where the Parties already entered into a written agreement signed by the Parties, their counsel, and the mediator. In this context, it is well established that preliminary, written agreements can create binding obligations despite the presence of later, more formal agreements. *See Adjustrite Systems, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543, 548 (2d Cir. 1998) ("In some circumstances, however, preliminary agreements can create binding obligations.") (citations omitted).

Next, Plaintiff argues that the "language of the Mediation Agreement [that] favors enforceability"—including the statements "IT IS HEREBY AGREED" and "agreement has been reached on all issues"—was drafted by neither party and was instead pre-printed on Court mediation form. This fact, however, does not change the import of these statements because the Parties were free to amend the Mediation Agreement—including the pre-printed language—before signing. The Court disagrees that this was "not language over which the parties had control." Indeed, courts in this District have found similar pre-printed language to indicate the Parties' intent, and Plaintiff cites no cases concluding otherwise. *See, e.g., Little v. Greyhound Lines, Inc.*, 04-CV-6735, 2005 WL 2429437, at *1 (S.D.N.Y. Sept. 30, 2005) ("[Plaintiff's counsel] and defense counsel each signed the pre-printed form stating 'FOLLOWING MEDIATION THE

PARTIES HAVE REACHED A SETTLEMENT AGREEMENT AND WILL FILE APPROPRIATE PAPERS.' . . . [Plaintiff's] mediation attorney and defense counsel each signed a settlement agreement that clearly indicated that the parties had reached a settlement through mediation."); *see also Elliott v. City of New York*, 11-CV-7291, 2012 WL 3854892 (S.D.N.Y. Sept. 5, 2012).

Finally, Plaintiff argues that the fact that there were "substantive provisions left to negotiate following the mediation demonstrates why there can be no claim that there was not a reservation of right not to be bound." Pl. Objections at 5-6. This argument is not supported by any caselaw and is contradicted by the express text of the Mediation Agreement, which does not include an express reservation and instead notes, three times, that an agreement has been reached between the Parties. *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 424 (S.D.N.Y. 2012) ("The strongest indication of objective intent arises from an express, written reservation not to be bound."). The only case Plaintiff cites to support this argument—*Clark v. Gotham Lasik, PLLC*, No. 11-CV-1307, 2012 WL 987476 (S.D.N.Y. Mar. 2, 2012)—is inapposite because the plaintiffs in that case asked the court to "hold that the oral representations made by the defendants at the mediation session constitute a binding agreement." *Id.* at *2. Given that the previous agreement in *Clark* was oral, there was no opportunity for the Parties to give their "express, written reservation not to be bound" as there was in this case. *Singer*, 852 F. Supp. 2d at 424.

B. **Partial Performance**

Judge Lehrburger concluded that given Plaintiff's "retention of pay received pursuant to the Mediation Agreement, her acknowledgment of promises made in the Mediation Agreement, and her inquiry to obtain the benefits of those promises, the second *Winston* factor favors enforcement." R&R at 20. Plaintiff objects for two reasons.

First, Plaintiff argues that the week of salary paid to her should not count as partial performance because (1) the payment came after she repudiated the Mediation Agreement and when she believed she remained Defendant's employee; and (2) there was no obligation to return the money once there was a dispute over the Settlement Agreement.  Plaintiff's repudiation and belief that she remained Defendant's employee is irrelevant unless Defendant was aware of that before making payments to Plaintiff. *See Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 636 (S.D.N.Y. 2011) ("[T]he timing of performance may be significant . . . . [I]f one of the parties sought to repudiate the agreement before partial performance, the fact that the other side persisted in performing would have little weight.").  Plaintiff does not provide evidence to rebut the R&R's conclusion that "[a]lthough those payments occurred after Plaintiff repudiated the agreement, [Defendant] took the steps required to effect payment before [Defendant] even became aware of Plaintiff's repudiation." R&R at 18.[2]  It is undisputed that Plaintiff did not report to work from August 19, 2019 through August 23, 2019, and accordingly she would not have been paid but for the Mediation Agreement.  Plaintiff's assertion that she was under no obligation to return the money once there was a dispute over the enforceability of the Settlement Agreement is unavailing. Defendant did not repudiate the agreement; Plaintiff did.  Accordingly, Plaintiff's acceptance of Defendant's payment indicates her intent to be bound to the agreement and supports a finding of partial performance by Defendant.

---

[2] Plaintiff notes that "[i]t is unlikely that Defendant's counsel arranged for these payments to be made to Plaintiff between Friday afternoon and Monday morning, when Plaintiff's counsel became aware of the repudiation." Pl. Objections at 7.  Plaintiff goes on to admit that this is conjecture because "Defendant's counsel never states when he first became aware of Plaintiff's statements to here [sic] counsel that she wished to renege on the proposed settlement." *Id.* n.2.  However, the declaration cited by Judge Lehrburger, and sworn under penalty of perjury, notes: "[B]efore Plaintiff informed Plaintiff's counsel, Defendant, or Defendant's counsel that she wished to renege, I instructed Defendant to set up Plaintiff's payment for the 'regular pay . . . until August 23, 2019' and unused PTO for the next pay period (August 30, 2019), which Defendant did." R&R at 18 (citing Second LaRose Decl. ¶5).

Next, Plaintiff asserts that Defendant only began to provide COBRA coverage long-after Plaintiff repudiated the settlement.  Judge Lehrburger, however, did not put weight in Defendant's actions in providing COBRA coverage to Plaintiff.  Instead, he concluded that Plaintiff's actions indicated an intent to be covered by Defendant, and that she indicated interest in taking advantage of the COBRA provision of the Mediation Agreement. "In other words, regardless of the timing of [Defendant's] funding of Plaintiff's COBRA coverage, Plaintiff acted as if she understood the Mediation Agreement to be binding." R&R at 19.  Accordingly, Plaintiff's arguments about the timing of the COBRA funding are tangential to the fact that Plaintiff sought to take advantage of the benefits of the Mediation Agreement, further evincing an understanding that it was binding on the Parties. *See id.* at 20 ("Given Plaintiff's . . . acknowledge of promises made in the Mediation Agreement, and her inquiry to obtain the benefits of those promises, the second *Winston* factor favors enforcement.").

### C.  **Open Material Terms**

Judge Lehrburger concluded that "while the additional terms introduced post-agreement were negotiated by counsel without incident following mediation, they were not essential to the agreement already achieved." *Id.* at 24.  Plaintiff argues that because the Mediation Agreement stated that "[a] full settlement agreement w/applicable releases will follow," and because there were additional terms in the Settlement Agreement, the Mediation Agreement is "insufficient to completely resolve the dispute." Pl. Objections at 9.  This argument was already addressed and rejected by Judge Lehrburger. *See* R&R at 23-24.  As the Second Circuit has noted, preliminary agreements can create binding obligations "when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." *Adjustre Sys., Inc.*, 145 F.3d at 548.  Just as Judge Lehrburger noted, this

Court also "knows of no case holding that parties cannot have an enforceable settlement agreement of an employment discrimination dispute without including terms addressing confidentiality, non-disparagement, and the like." R&R at 23.  Moreover, "[n]othing in the record indicates that either party raised the additional terms at the mediation or that they were a source of dispute before, during, or after the mediation." *Id.*  Indeed, Plaintiff objected and repudiated the Parties' agreement before any additional terms in the Settlement Agreement were presented to her, further indicating that the additional terms were neither material nor essential. *See* R&R at 24 ("Although determination of materiality is an objective one, the fact that Plaintiff never expressed concern one way or the other about the additional terms is a telling indicator.").  The terms added between the Mediation Agreement and the Settlement Agreement were not essential to the agreement already achieved between the Parties.

      D.  **Type of Contract**

Judge Lehrburger concluded that the Mediation Agreement fell into the category of agreements that parties may expect to be bound by even before the agreement is memorialized in a more formal written document.  Plaintiff argues that, in general, employment discrimination cases are often finalized into more formal writings, indicating that the Parties in this case would not expect to be bound until the Final Settlement Agreement was executed.  This argument was considered and rejected by Judge Lehrburger.  Judge Lehrburger acknowledged that many employment discrimination settlements are finalized into more formal writings, but he went on to note that such cases are often not settled in that manner.  In fact, courts in this District often enforce settlement agreements without a memorialized Final Settlement Agreement. R&R at 25 (citing cases where courts in this District have "enforce[d] the memoranda of understanding, term sheets, and open-court recitations agreed to at the end of mediations of employment discrimination

cases."). Thus, the Parties could reasonably expect to be bound by the Mediation Agreement in this case even in the absence of a Final Settlement Agreement.

Considering all of the *Winston* factors, the Court concludes that the Parties sufficiently indicated their intent to be bound by the signed Mediation Agreement, and accordingly, that the Mediation Agreement is enforceable.

## II. **Duress**

Judge Lehrburger concluded that, "[w]hile Plaintiff no doubt felt pressured during the mediation, the events she described are not legally sufficient to establish duress." R&R at 26. Plaintiff argues that the district court's decision in *Lloyd v. Holder*, 11-CV-3154, 2012 WL 1681772 (S.D.N.Y. Apr. 17, 2012) supports the conclusion that the conduct of a mediator can constitute duress, and that Plaintiff sufficiently alleges that she was "demeaned, disrespected and pressured during the mediation." Pl. Objections at 12. However, by Plaintiff's own admission, "*Holder* does not speak of duress." *Id. Holder* does not support the contention that a mediator's statements or conduct can legally establish duress sufficient to void a contract. Indeed, it is well-established in this District that duress must originate from the defendant, and Plaintiff cites no cases holding otherwise. *See, e.g.*, *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012), *aff'd*, 556 Fed. Appx. 56 (2d Cir. 2014) (unpublished) ("Further, in a contract dispute like this one, the duress at issue must have originated from the defendant."); *see also Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 343 (S.D.N.Y. 2010), *aff'd in relevant part*, 434 Fed. Appx. 31 (2d Cir. 2011) (unpublished) ("To the extent plaintiff's duress claim is based on alleged statements of [plaintiff's attorney] and the mediator, those statements are nothing more than comments on the strength of plaintiff's case and the consequences of failure to settle and do not amount to duress.").

## CONCLUSION

After *de novo* review of Judge Lehrburger's thoughtful and well-reasoned Report and Recommendation, as well as the factual and procedural record upon which it is based, and Plaintiff's objections, the Court **ADOPTS** the Report and Recommendation in its entirety and **OVERRULES** Plaintiff's objections.  Defendant's motion to enforce the settlement agreement is **GRANTED**.  The Clerk is respectfully directed to close this case.

**SO ORDERED.**

**Dated**:   **September 23, 2020**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**